UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TONYA JACKSON-HALL                                                    PLAINTIFF

V.                                          CIVIL ACTION NO. 3:11-cv-42-DPJ-FKB

MOSS POINT SCHOOL DISTRICT                                            DEFENDANT

ORDER

This employment dispute is before the Court on Defendant's, Moss Point School District,

motion for summary judgment [26] as well as numerous motions in limine filed by the parties

[50–58, 64].  The Court previously dismissed Plaintiff's retaliation claim but deferred ruling on

the sexual-harassment claim.  After oral argument and subsequent briefing, the Court finds that

the Motion for Summary Judgment should be denied and rules on the evidentiary motions as set

forth below.

I.        Motion for Summary Judgment

Defendant Moss Point School District argued that Plaintiff Tonya Jackson-Hall's sexual

harassment and hostile-work-environment claims are barred for failure to timely exhaust

administrative remedies.  Under 42 U.S.C. § 2000e-5(e)(1), a Title VII plaintiff must file an

EEOC charge "within one hundred and eighty days after the alleged unlawful employment

practice occurred . . . ."  The Fifth Circuit has "held that the limitations period on an employment

discrimination claim begins to run from the time the complainant knows or reasonably should

have known that the challenged act has occurred."  *Ramirez v. City of San Antonio*, 312 F.3d

178, 181 (5th Cir. 2002) (citations and quotations omitted).

The events in this case span a four-year period, during which Jackson-Hall was promoted

from teacher, to assistant principal, and then principal at three different schools.  She alleges that

during the 2006–2007 school year, the principal at another school within the district, Kim Staley,

began to harass her with sexual propositions and other inappropriate conduct.  The following

year, the District promoted Staley to superintendent, and Plaintiff contends that the propositions

and advances continued.  The propositions allegedly ended in January 2008, but Plaintiff claims

that after she rebuffed his advances, Staley began retaliating by yelling at her, being mean,

giving her a poor review, and then terminating her employment in June 2009.  She filed her

EEOC Charge of Discrimination that same month and filed this suit after receiving her notice of

right to sue.

The District contends in this motion that the alleged acts of harassment within the

statutory window cannot revive claims based on events occurring before that deadline.  For her

part, Jackson-Hall argues that she was subjected to quid pro quo harassment that culminated in

the loss of her employment.  She alternatively contends that the yelling, meanness, poor review,

and termination were part of an ongoing hostile work environment and therefore her claims

related to conduct outside the 180-day window survive.  The Court heard oral argument on these

issues and then requested supplemental briefing.  It is now prepared to rule.

A.      Quid Pro Quo Claim

Defendant's motion is denied for Jackson's quid pro quo claim.[1]  To state a prima facie

case for quid pro quo harassment, Jackson-Hall must show that: "(1) she suffered a tangible

employment action and (2) the tangible employment action resulted from her acceptance or

rejection of her supervisor's alleged sexual advances."  *La Day v. Catalyst Tech. Inc.*, 302 F.3d

---

[1]The District's supplemental brief does not directly mention the timeliness of a quid pro quo claim.

2

474, 481 (5th Cir. 2002) (citing *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000)).  "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *La Day*, 302 F.3d at 481–82 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Although the District's motion is premised on the statute of limitations, *see* Def.'s Mot. [26] ¶1, it argues that the termination fails to resuscitate the sexual-harassment claim because Jackson-Hall offers only her subjective belief that the termination was causally related to the termination.  The question presented in the motion, however, is whether she timely exhausted, not whether she can ultimately prevail.  As noted above, the limitations period under § 2000e-5(e)(1) begins to run "from the time the complainant knows or reasonably should have known that the challenged act has occurred."  *Ramirez*, 312 F.3d at 181.  The quid pro quo claim did not accrue until "she suffered a tangible employment action," *i.e.*, the termination.  *La Day*, 302 F.3d at 481; *see also Byers*, 209 F.3d at 424 (holding that limitations period runs from date of termination).  And Jackson-Hall filed her Charge of Discrimination within 180 days of that event.[2]  Defendant's motion is denied.

B.      Hostile Work Environment

Four acts of harassment allegedly occurred during the 180-day period: yelling, meanness, a poor job appraisal, and the termination of Jackson-Hall's employment.  In *National Rail Road*

---

[2]The Fifth Circuit has often noted in other contexts that the "period for filing a discrimination charge with the EEOC begins to run at the time of termination . . . ."  *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (holding that charge was timely filed) (citations omitted).

*Passenger Corp. v. Morgan*, the United States Supreme Court examined the timeliness of hostile-work-environment claims where alleged harassment occured before and after the statutory window for filing an EEOC charge. 536 U.S. 101 (2002). The Court held: "Provided that an act *contributing to the claim* occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id*. at 117 (emphasis added). Or, said differently, "[i]n order for the charge to be timely, the employee need only file a charge within 180 . . . days of any act *that is part* of the hostile work environment." *Id*. at 118 (emphasis added). The Court then provided the following examples:

> The following scenarios illustrate our point: (1) Acts on days 1–400 create a hostile work environment. The employee files the charge on day 401. Can the employee recover for that part of the hostile work environment that occurred in the first 100 days? (2) Acts contribute to a hostile environment on days 1–100 and on day 401, but there are no acts between days 101–400. Can the act occurring on day 401 pull the other acts in for the purposes of liability? In truth, all other things being equal, there is little difference between the two scenarios as a hostile environment constitutes one "unlawful employment practice" and it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole. Nor, if sufficient activity occurred by day 100 to make out a claim, does it matter that the employee knows on that day that an actionable claim happened; on day 401 all incidents are still part of the same claim. On the other hand, *if an act on day 401 had no relation to the acts between days 1–100*, or for some other reason . . . was *no longer part of the same hostile environment claim*, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act.

*Id*. at 118 (emphasis added). At the summary judgment stage, a trial court's "task is to determine whether the acts about which an employee complains are *part of the same actionable hostile work environment practice*, and if so, whether any act falls within the statutory time period." *Id*. at 120 (emphasis added).

Here, Plaintiff alleges sexual advances that ended before the statutory window closed. Within the window—*i.e.*, after December 2008—she essentially claims that Staley was mean,

unfair, and terminated her employment.  Starting with the termination, the Court finds that it is a separate discriminatory act and not part of the hostile-work-environment claim.  *See Morgan*, 536 U.S. at 118; *c.f.*,  *Hartz v. Adm'rs of Tulane Educ. Fund*, 275 F. App'x 281, 288–89 (5th Cir. 2008) (citing *Morgan*) (reversing denial of dismissal under Federal Rule of Civil Procedure 12(b)(6) and rejecting district court's holding that decision to deny tenure (and therefore terminate employment) was so "intertwined with the hostile work environment claim as to make it a component part of a larger unlawful employment practice").

As for the other acts occurring within the window, there is at least an argument that they are related to the otherwise time-barred sexual advances.  But mere relatedness may not prove sufficient.  *See Morgan*, 536 U.S. at 113 (noting that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"). The question—in a hostile-working-environment context—is whether, as a matter of law, the Court can find that the events within the statutory window were "part of" the same hostile-environment claim as the events before the window.  *Id.* at 120.  Although the Court views this as a very close call, it will not dismiss the claim at this time because the quid pro quo claim survives and is based on the same alleged acts.  Allowing the hostile-work-environment claim to advance will not, therefore, affect the evidence.  Accordingly, the Court, out of an abundance of caution, will allow the hostile-work-environment claim to survive at least for now.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) ("Neither do we suggest that . . . the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.").

C.      Sexual Discrimination

Defendant also moved to dismiss Jackson-Hall's "sexual-discrimination" claim, but it is

not apparent that she pleaded or prosecuted any such claim apart from those addressed above.

To the extent she did, the motion is granted.

II.      Motions in Limine

The parties present a host of in limine motions.  As summarized by the Fifth Circuit

Court of Appeals:

> A motion in limine is a motion made prior to trial for the purpose of prohibiting
> opposing counsel from mentioning the existence of, alluding to, or offering
> evidence on matters so highly prejudicial to the moving party that a timely motion
> to strike or an instruction by the court to the jury to disregard the offending matter
> cannot overcome its prejudicial influence on the jurors' minds.

*O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (citation and quotation

omitted).  Issues excluded from evidence in limine may be revisited at trial outside the presence

of the jury.

A.      Conceded Issues

The following motions were conceded and are therefore granted: Omnibus Motion [50]

as to issues I–V, VII–X, XIII–XIV, XVII, XVIII; Motion [52]; Motion [55]; and Motion [58].

B.      Disputed Issues

1.      Defendant's General Motion in Limine [50]

a.      Issue VI

The District seeks to exclude reference to witnesses who are equally available to either

party but are not called to testify.  Defendant bases this motion on Rules of Evidence 103(c),

402, 403, 602, 701, and 802.  Plaintiff counters that mention of such witnesses would not

constitute hearsay.  The motion is granted.  "It is well-settled that it is impermissible to draw any inference from a party's failure to call witnesses that were equally available to both sides." *United States v. Virgen-Moreno*, 265 F.3d 276, 291 (5th Cir. 2001).  Thus, any such comments would be irrelevant and substantially more prejudicial than probative.  Fed. R. Evid. 401, 402, 403.  That said, "[w]hen a witness is controlled by one party, failure to call the witness, if his testimony would elucidate facts in issue, creates an inference which the jury is permitted to draw against that party."  *United States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir. 1970).  If Plaintiff contends that any such witnesses are controlled by the District, then she must first raise the issue outside the presence of the jury.

> b.      Issue XI

The District seeks to exclude prior claims or suits against Defendant based on hearsay, relevance, and unfair prejudice.  Fed. R. Evid. 402, 403, 801, 802.  Plaintiff observes that the motion fails to identify the claims, and states that they could be relevant.  Plaintiff is at least correct that there is nothing for this Court to weigh.  But because the issue of other suits could potentially raise serious issues under Rule 403, the Court will err on the side of caution, temporarily grant the motion, and instruct the parties to raise the issue again—if necessary—before trial commences.

> c.      Issue XII

The District seeks to exclude "general derogatory comments about Defendant" for lack of relevance and unfair prejudice.  Fed. R. Evid. 402, 403.  Plaintiff again observes that the statements have not been identified.  The motion is denied for this reason.  Defendant has not shown that any such comments would be so prejudicial that they could not be handled with a

timely objection.  Finally, the motion is so broadly worded that a ruling could have a chilling effect on Plaintiff's case—descriptions she characterizes as factual could be viewed by the District as derogatory.

          d.       Issue XV

The District seeks to exclude statements or language contained in the parties' pleadings or answers to interrogatories or discovery unless they have been "properly introduced into evidence."  The motion is denied.  The Court may not fully understand the basis of this motion, but the Federal Rules of Evidence and Federal Rules of Civil Procedure both allow the use of these materials at trial even if they are not introduced into evidence.  For example, either party could use an interrogatory response to impeach a witness's testimony under Rule 613, without actually introducing the document into evidence.  If the Court has missed the point, the District may clarify its position before the trial commences.

          e.       Issue XVI

*See* § II(B)(3) below.

          2.       Defendant's Motion to Exclude "Pattern and Practice" Evidence [51], and Defendant's Motion to Exclude Kim Staley's Alleged Reputation for Harassment and Retaliation [53]

These two motions raise similar issues.  In the first [51], the District seeks to exclude "pattern and practice" evidence not specifically related to Plaintiff's claims.  More specifically, it seeks to exclude testimony from (1) Keena Sims Locke that Staley sexually harassed her from 2005–2009; (2) Officer Cedric Douglas that "he knows of other women in the apartment of the Superintendent"; (3) Plaintiff that she was aware of a pattern or practice; and (4) other unidentified witnesses who may claim to have been harassed or heard of Stanley's reputation for

harassment.  In the second Motion [53], the District seeks to generally exclude evidence regarding Staley's alleged reputation for harassment and retaliation.  More specifically, it seeks to exclude specific testimony from Jackson-Hall that she heard about Staley's conduct with other women and his reputation.  In both, the District claims that the evidence is irrelevant, unduly prejudicial, not based on personal knowledge, and constitutes unredeemed hearsay.  Defendant also asserts in the second motion [53] that the evidence is time barred.

Plaintiff never responded to Motion [51].  And although the issues overlap to some extent, her arguments raised with respect to Motion [53] fail to adequately address the arguments Defendant offered as to Motion [51].  Absent a substantive response, the Court finds that Motion [51] must be granted.

As for Motion [53], Plaintiff contends first that the evidence is not time-barred.  The Court agrees for the reasons stated in the next section.  She then states—without explanation or authority—that "this testimony would not be hearsay as they are admissions of a party opponent."  Pl.'s Resp. [60] at 2.  That arguments falls flat for two reasons.  First, much of Plaintiff's testimony listed in the District's motion is based on second or even third-hand information—if not rumor.  Second, none of Plaintiff's testimony was based on Staley's declarations, and if she contends that the other declarants were either authorized to make the statements or acted as agents of the District within the scope of that relationship, then she has the burden of establishing the requirements of Federal Rules of Evidence 801(d)(2)(C) & (D).  She makes no such effort.  Accordingly, Motion [53] is granted.

9

3.      Defendant's Motion to Exclude Evidence Related to Claims Barred by the Statute of Limitations [54]

The District seeks to exclude evidence of harassment outside the statute of limitations for lack of relevance and unfair prejudice.  Fed. R. Evid. 402, 403.  Evidence of conduct occurring before the 180-day window is relevant to both the hostile-work environment claim and the quid pro quo claim.  The latter requires proof that Jackson-Hall accepted or rejected Staley's alleged sexual advances.  *La Day*, 302 F.3d at 481 (describing prima facie case).  The fact that the claim accrued within the 180-day window does not remove the relevance of predicate acts occurring before that window.  The evidence has high probative value regarding an essential element that is not substantially outweighed by Rule 403 concerns.  In any event, the statute of limitations would not "bar an employee from using the prior acts as background evidence in support of a timely claim."  *Morgan*, 536 U.S. at 113.  Motion [54] is therefore denied.

4.      Defendant's Motion to Exclude Anonymous Letter [56]

The District seeks to exclude an anonymous letter referencing sexual harassment based on relevance, prejudice, and hearsay grounds.  Fed. R. Evid. 401, 402, 403, 801, and 802.  Jackson-Hall concedes that she does not know who authored the letter but suggests that a witness might admit having written it.  At this point, the document suffers from hearsay and authenticity deficiencies.  Moreover, the content is too prejudicial to allow the jury to hear what it says while Plaintiff seeks a sponsoring witness.  Accordingly, Motion [56] is granted.  Plaintiff may not reveal the content of the letter.  If Plaintiff discovers the author, then counsel is instructed to raise the relevance and prejudice issues outside the jury's presence.

5.     Defendant's Motion to Limit Alleged Back Pay and Front Pay Damages
[57]

Defendant asserts that Plaintiff's claims for front and back pay are limited by her contract

of employment.  Alternatively, the District asserts that any award of back pay must be reduced

by the amount Jackson-Hall earned from subsequent employers.  The motion is denied.

As an initial point, the motion does not seek to exclude evidence so much as it seeks a

dispositive ruling on damages.  But "a motion in limine cannot be a substitute for a motion for

summary judgment, a motion to dismiss, or a motion for directed verdict."  *Morgan v.*

*Mississippi*, No. 2:07-cv-15-MTP, 2009 WL 3259233, at *1 (S.D. Miss. Oct. 8, 2009) (citing 21

Charles Alan Wright & Kenneth W. Graham, Jr., Fed. Prac. & Proc § 5037.18 (2d ed. West

2009) (stating "the preexisting caselaw provides ammunition against those who would use the

motion in limine as a substitute for a motion for summary judgment or other peremptory ruling

in civil cases")) (additional citations omitted).  The deadline for filing such motions has passed,

and the motion is denied as untimely.

Even if timely filed, the mitigation issue is simply a statement of the law as applied to

questions of fact and will be covered in the Court's standard instructions.  As for the cap on back

or front pay, Defendant correctly observes that educators in Mississippi sign one-year contracts

and that Jackson-Hall had no contract beyond the 2009–2010 school year.  It then contends that

state employees have no property interest in continued employment.  While that may be true in

the constitutional context, the question is whether Jackson-Hall can prove by a preponderance of

the evidence that she suffered back and front pay damages.  According to her, "it is likely that

she would have continued her employment with Defendant with additional contracts."

Defendant offered no authority suggesting that a Title VII plaintiff is precluded from proving the

11

possibility of additional one-year contracts but for the discriminatory termination of employment.  The Court finds that this is a question of fact for the jury.  *Cf., Edwards v. Gladewater Indep. Sch. Dist.*, 572 F.2d 496, 498 (5th Cir. 1978) (affirming award of back pay due to non-renewal of teacher's contract and rejecting argument that "effect of the district court's decision is to award tenure" because "tenure is irrelevant in the type of case presently before" the court).

      6.    Plaintiff's Motion in Limine [64]

Plaintiff seeks to exclude evidence that the School Board denied her appeal of the termination decision.  The motion is denied.  First, the motion is not timely.  Second, the motion essentially seeks a pre-trial ruling on Plaintiff's "cat's paw" argument that Mr. Staley manipulated the final decisionmakers.  Whether he did is a question of fact that will be submitted to the jury if supported by the evidence.

III.    Conclusion

Based on the foregoing, the Court finds that Defendant's motion for summary judgment should be denied.  As to the motions in limine, the Court finds as follows: [50] granted in part and denied in part; [51] granted; [52] granted; [53] granted; [54] denied; [55] granted; [56] granted; [57] denied; [58] granted; and [64] denied.

**SO ORDERED AND ADJUDGED** this the 2nd day of April, 2012.

        s/ *Daniel P. Jordan III*
        UNITED STATES DISTRICT JUDGE